# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ERIC W. CASTELLON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-418

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Eric W. Castellon brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of

errors (Doc. 12), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply

memorandum (Doc. 19).

## I. Procedural Background

Plaintiff filed an application for DIB and SSI in January 2011, alleging disability since

July 1, 2007 due to a combination of physical and mental impairments, including lumbar and

cervical disc disease, degenerative joint disease of the right shoulder, seizure disorder, hepatitis

C, depression, anxiety disorder, posttraumatic stress disorder ("PTSD"), and substance abuse

disorder. The application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Gregory

Kenyon on May 23, 2013. On August 8, 2013, ALJ Kenyon issued a decision denying plaintiff's

application.[1]  Plaintiff's request for review was granted, and the Appeals Council remanded the case for consideration of new evidence submitted into the record since ALJ Kenyon's decision. The Appeals Council remanded the case with instructions to obtain additional evidence as available and warranted, to obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments, to give further consideration to plaintiff's maximum residual functional capacity level, and to obtain additional input from a vocational expert.  (Tr. 202-05).

On remand, additional treatment records were submitted into evidence.  Plaintiff was sent for a consultative medical examination in March 2015.  Plaintiff and a vocational expert ("VE") appeared and testified at a new hearing before ALJ Kevin J. Detherage on November 15, 2015. However, the ALJ did not obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments as ordered by the Appeals Council.  ALJ Detherage issued a written decision denying plaintiff's application on January 21, 2016.  Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Detherage the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

---

[1] ALJ Kenyon found that plaintiff had the RFC to perform sedentary work subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) frequent use of the right upper extremity for pushing and pulling; (5) no overhead reaching with the right upper extremity; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional superficial contact with co-workers, supervisors, and the public; (8) no rapid production pace work or strict production quotas; and (9) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the work routine from one day to the next.  (Tr. 190).

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

ALJ Detherage applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date (20 CFR 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: lumbar and cervical disc disease, degenerative joint disease of the right shoulder, seizure disorder, hepatitis C, depression, anxiety disorder, posttraumatic stress disorder, and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) which is unskilled, except that he can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. The [plaintiff] should avoid exposure to hazards such as heights or machinery with moving parts, and should avoid concentrated exposure to dust, fumes, gases, odors, or poorly ventilated areas. He can frequently reach, including overhead, with the right upper extremity. The [plaintiff] can perform no production rate pace work and can tolerate only occasional changes in a routine work place setting. He should have no more than occasional contact with coworkers, supervisors, or the general public and can perform no commercial driving. The [plaintiff] is likely to be absent from work one day per month.

6. The [plaintiff] is unable to perform any of his past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born . . . [in] . . . 1970 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The [plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1464 and 416.964).

---

[2] Plaintiff has past relevant work as a carpentry inspector, construction worker, and lawn sprinkler worker, jobs which required medium to heavy physical exertion. (Tr. 24).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled sedentary occupations such as small products assembler (55,000 jobs nationally) and printed circuit board assembly touchup screener (40,000 nationally). (Tr. 24, 85-86).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ (1) failed to properly evaluate his credibility, (2)

failed to comply with 20 C.F.R. § 404.1520a in analyzing the severity of his mental impairments,

(3) improperly weighed the opinions of his mental health treating sources, and (4) failed to

properly evaluate his RFC. (Doc. 12).

**1. The ALJ failed to properly weigh the opinion of plaintiff's treating psychiatrist, Dr. Show Lin.**

*a. The parties' arguments*

Plaintiff alleges as his third assignment of error that the ALJ erred in assigning "little

weight" to the opinion of his treating psychiatrist, Dr. Show Lin. (Doc. 12 at 18).[4] In light of

this, plaintiff argues that the ALJ erred in determining that plaintiff's mental impairments did not

meet or medically equal the criteria of Listings 12.04, 12.05, and 12.06. (*Id.* at 21). Plaintiff

argues that the ALJ failed to analyze the frequency, intensity, and duration of his mental health

---

[4] Page citations are to the ECF page number.

treatment at the Veterans Administration Hospital ("VA"), where he has treated for almost ten years, including the VA's finding that he is 50% disabled. (*Id.* at 21-22). Plaintiff also argues that the ALJ failed to provide any explanation or guidance for rejecting Dr. Lin's opinion based on his improved condition. (*Id.* at 22). Plaintiff contends that the ALJ erred in not ordering an additional mental consultative evaluation, which the Appeals Council ordered on remand. (*Id.*). Plaintiff also argues that Dr. Lin's opinion is consistent with the opinions of physical consultative examiner Dr. Frost, as well the opinion of mental consultative examiner Dr. Griffiths, which was conducted in 2009 in connection with plaintiff's initial hearing. (*Id.* at 22-23). Plaintiff further argues that the ALJ "erred in discounting the severity of the impairments based upon periodic and intermittent improvements with treating while failing to address portions of the record including evidence of the improvement being temporary and subsequent declines with evidence of a continuing impairment." (*Id.* at 23). Plaintiff also argues that the ALJ had a duty to recontact Dr. Lin to resolve conflicts in the evidence and to more fully develop the record. (*Id.*).

In response, the Commissioner argues that the ALJ properly weighed the medical opinions of record. (Doc. 16 at 11-17). The Commissioner argues that the ALJ adequately explained that Dr. Lin's opinion was inconsistent with his progress notes, which "did not document the significant level of mental illness described in his assessment." (*Id.* at 13). The Commissioner argues that the ALJ explained that Dr. Lin's opinion contrasted with VA records indicating moderate signs and findings. (*Id.*). The Commissioner further argues that the ALJ correctly noted that Dr. Lin's assessment of plaintiff's mental limitations was inconsistent with the longitudinal record evidence, including the opinions of the state-agency reviewing physicians who opined that plaintiff could perform work that was not fast-paced, required only superficial

interaction with others, and required only infrequent changes. (*Id.* at 14) (citing Tr. 22, 138, 151, 165, 177). The Commissioner argues that while the ALJ did not expressly reference the VA's finding that plaintiff was 50% disabled due to PTSD, the ALJ "extensively considered the VA medical records regarding PTSD," which was only moderate in nature according to the VA's criteria. (*Id.*) (citing Tr. 16, 22-23). The Commissioner contends that the ALJ was within his discretion to not obtain another mental consultative examination "[g]iven the extensive medical reports in the record, fully addressing the [plaintiff's] impairments and limitations, and the ALJ's exhaustive discussion regarding the [plaintiff's] medical history." (*Id.* at 15).

### b. *Medical opinions*

Dr. Show Lin, plaintiff's staff addiction psychiatrist at the VA, completed a mental impairment questionnaire on May 22, 2013. (Tr. 2180-2182). Dr. Lin identified plaintiff's diagnoses as PTSD and opiate dependence (agonist therapy). (Tr. 2180). He identified plaintiff's symptoms as follows: marked diminished interest or pleasure in almost all activities; sleep disturbance; feelings of guilt or worthlessness; difficulty concentrating or thinking; generalized persistence anxiety accompanied by autonomic hyperactivity, apprehensive expectation, and vigilance and scanning; a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; and recurrent or intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress. (*Id.*). Dr. Lin indicated that plaintiff began treatment at the VA for opiate dependency in November 2009 and for PTSD in April 2012. (*Id.*). Dr. Lin reported that plaintiff was "[c]urrently in good-standing in opiate intervention program." (*Id.*).

Dr. Lin estimated that plaintiff's impairments lasted or could be expected to last at least 12 months. (Tr. 2181). Dr. Lin opined that plaintiff had marked limitations in the following

eight areas: (1) the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period; (2) the ability to understand, remember, and carry out complex job instructions; (3) the ability to accept instructions and criticisms from supervisors; (4) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5) the ability to respond appropriately to changes in the work setting; (6) the ability to maintain social functioning; (7) the ability to maintain concentration, persistence or pace, so as to complete tasks in a timely manner in work or work-like settings; and (8) the ability to deal with, on a sustained basis, the stress of getting to work regularly, having performance supervised, and remaining in the workplace for a full day. (Tr. 2181-2182). Dr. Lin further noted:

> This patient has been under our care within the Mental Health and Substance Dependence-Opiate Substitution Program for an extended period of time since November 2009. He is very well known to us and our services. Patient has been formally assessed for PTSD and other anxiety & depressive disorder on several occasions to include November 9, 2011, May 31, 2011, & April 25, 2012. He has been given the Post Traumatic Checklist (PCL), Beck Anxiety and depression inventory, along with psychosocial assessments in keeping with PTSD diagnosis. Even when his drug dependency is well managed his symptoms persist although some improvement.

(Tr. 2182).

Clinical Psychologist Dr. Brian Griffiths conducted a mental consultative evaluation at the request of the state agency on September 18, 2009. (Tr. 485-90). During the examination, plaintiff appeared to be irritable and somewhat hostile. (Tr. 487). Dr. Griffiths noted that it was possible that plaintiff's "angry demeanor was masking underlying pain and/or anxiety." (*Id.*). Plaintiff displayed no loose associations or flight of ideas and was adequately organized and easily followed conversationally. (*Id.*). Plaintiff reported that his attention and concentration

were "not very good," his sleep was poor, and his energy levels were low. (*Id.*). At this time, plaintiff had "no history of involvement with the mental health system." (*Id.*). Plaintiff alluded to symptomology suggestive of PTSD. (Tr. 488). Plaintiff was alert, responsive, and oriented to time, place, person, and situation. (*Id.*). His short-term memory skills were average, but his attention and concentration skills were not strong as he could not correctly calculate serial sevens. (*Id.*). Dr. Griffiths assigned plaintiff a GAF score of 51.[5] (Tr. 490).

In evaluating plaintiff's mental ability to relate to others, including fellow workers and supervisors, Dr. Griffiths opined that plaintiff is "moderately impaired by his emotional difficulties." (*Id.*). Dr. Griffiths explained that plaintiff "would very likely have difficulty relating adequately to others in completing simple repetitive tasks." (*Id.*). In evaluating plaintiff's mental ability to understand, remember, and follow simple instructions, Dr. Griffiths opined that plaintiff is "mildly impaired by his emotional difficulties" and "would have no difficulty understanding simple instructions, but his depression, anxiety and low frustration tolerance may impair his short-term memory skills causing them to deteriorate over extended periods of time slowing his performance in completing simple repetitive tasks." (*Id.*). As to plaintiff's ability to maintain attention, concentration, and persistence in pace, Dr. Griffiths found that plaintiff was "mildly impaired by his emotional condition." (*Id.*). Dr. Griffiths explained that plaintiff's anxiety "may interfere with his attention and concentration skills causing them to deteriorate over extended time periods, slowing his performance in completing simple repetitive tasks." (*Id.*). As to plaintiff's mental ability to withstand the stress and

---

[5] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (citing *DSM–IV–TR* at 34).

10

pressure associated with day-to-day work activity, Dr. Griffiths opined that plaintiff is "moderately impaired by his emotional difficulties." (*Id.*). He explained that "stress may lead to increased anxiety, decreased frustration tolerance, and increased acting out behaviors and interfering with his ability to relate adequately to others." (*Id.*).

Dr. Carl Tishler, Ph.D., reviewed the record and completed a mental RFC assessment at the request of the state agency on August 9, 2011. (Tr. 138-39). Dr. Tishler opined that plaintiff had sustained concentration and persistence limitations and is moderately limited in his abilities to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 138). Dr. Tishler opined that plaintiff "retains the capacity to perform work which is not fast paced." (*Id.*). Dr. Tishler noted that plaintiff has social interaction limitations, including moderate limitations in his abilities to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 139). Dr. Tishler opined that plaintiff "retains the capacity to perform work which requires superficial interaction with others." (*Id.*). Dr. Tishler opined that plaintiff also has adaptation limitations, including moderate limitations in his ability to respond appropriately to changes in the work setting. (*Id.*). Dr. Tishler noted that plaintiff "retains the capacity to perform work which requires infrequent changes." (*Id.*).

State agency psychologist Frank Orosz, Ph.D., reviewed the record for reconsideration

purposes on December 2, 2011. (Tr. 164-66). Dr. Orosz affirmed Dr. Tishler's assessment. (Tr. 165).

### c. The ALJ's decision

The ALJ afforded Dr. Show Lin's May 2013 mental impairment questionnaire "little weight." (Tr. 22). The ALJ explained that "Dr. Lin's progress notes do not document the significant level of mental illness described in this assessment." (Tr. 23). The ALJ further noted that "Dr. Lin's indication that basically all of the [plaintiff's] functional capacities are moderately to markedly limited stands in contrast to records from the Veterans Administration reflecting signs and findings at only the moderate level." (Id.).

The ALJ afforded "some weight" to the September 2009 consultative psychological evaluation performed by Dr. Griffiths. (Tr. 22). The ALJ noted that Dr. Griffiths "listed a GAF of 51, reflective of moderate symptomology, and concluded that the [plaintiff] has moderately limited ability to relate to others because of emotional difficulties." (Id.). The ALJ explained that even though Dr. Griffiths's assessment was six years old (at the time of the ALJ decision), his findings are "consistent with his narrative report, and also with much of the treatment record." (Id.).

The ALJ afforded "significant weight" to the August and December 2011 opinions of the state agency reviewing psychologists, Drs. Tishler and Orosz. (Id.). The ALJ noted: "[t]his assessment comes from qualified medical experts who had the opportunity to review the entire record available at the time, and who have expertise in the area of reviewing medical records and applying the findings of that review to an assessment of functional capacity within the standards applied by the Social Security Administration in adjudicating claims for disability." (Id.). The ALJ further accommodated their opinions by finding that plaintiff can perform no production

rate pace work, can tolerate only occasional changes in a routine work place setting, and should have no more than occasional contact with coworkers, supervisors, or the general public. (*Id.*).

### d. *Analysis*

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. *Snell v. Comm'r of Soc. Sec.*, 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013); 20 C.F.R. §§ 404.1527, 416.927. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). The opinions of non-examining physicians are afforded the least deference under the regulations. *Woodcock v. Comm'r. of Soc. Sec.*, 201 F. Supp.3d 912, 919 (S.D. Ohio 2016). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The ALJ's decision to give Dr. Lin's May 2013 assessment less than controlling weight is not substantially supported by the record. The ALJ found that Dr. Lin's assessment conflicted with progress notes and records from the Veterans Administration "reflecting signs and findings at only the moderate level." (Tr. 23). However, the ALJ did not identify any specific evidence or specific records from the VA that led him to this conclusion. The ALJ's opinion provides

little, if any, discussion on VA mental health records or Dr. Lin's treatment of plaintiff's mental impairments. The ALJ noted that plaintiff was hospitalized at the VA in August 2012 for opiate dependence and was noted to have PTSD, ADHD, depression, and anxiety. (Tr. 23). The ALJ explained that plaintiff received a GAF score of 45.[6] (*Id.*). The ALJ referenced another incident in October 2012 where plaintiff was admitted for opiate withdrawal and was noted to have polysubstance abuse, PTSD, mood disorder, and nicotine dependence. (*Id.*). During this visit, plaintiff was discharged against medical advice and assigned a GAF score of 45 at discharge. (*Id.*). Yet, the ALJ did not discuss the significance of these findings when evaluating Dr. Lin's opinion under the first or second prongs of the controlling weight standard. The Court is unable to discern from the ALJ's citations to these records how plaintiff's mental impairments were more "moderate" than Dr. Lin assessed. The ALJ did not make a proper finding, supported by substantial evidence, that Dr. Lin's opinion was not consistent with the totality of the evidence. *See Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

Moreover, as plaintiff argues, the ALJ's opinion does not indicate that he considered the VA's determination that he was 50% disabled. (Ex. 4F, Tr. 1645-1663). The Social Security Regulations provide that a determination made by another agency on an individual's disability is not binding: "[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not [the ALJ's] decision about

---

[6] A score between 41 and 50 "indicates serious symptoms, and such an individual may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job." *Carter v. Berryhill, Acting Comm'r of Soc. Sec.,* No. 1:16-cv-01840, 2017 WL 2544064, at *2 (N.D. Ohio May 26, 2017) (Report and Recommendation), *adopted,* 2017 WL 2537066 (N.D. Ohio June 12, 2017) (citing DSM IV at 34).

whether you are disabled or blind. [The ALJ] must make a disability or blindness determination based on social security law." 20 C.F.R. § 404.1504; 20 C.F.R. § 416.904.[7] Nevertheless, as the ALJ must consider all the evidence in the record in making a disability determination, he must consider disability decisions made by other governmental agencies like the VA and explain the consideration given to such evidence. *See* Social Security Ruling 06-3p, 2006 WL 2329939 (evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered). Likewise, the Sixth Circuit has held that an ALJ must consider a disability decision of the Veterans Administration and articulate reasons for the amount of weight assigned to that decision. *Rothgeb v. Astrue*, 626 F. Supp.2d 797, 809 (S.D. Ohio 2009) (citing *Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985)). Because the ALJ failed to address the VA disability determination, this error in itself warrants remand. *See id.*

The ALJ also rejected Dr. Lin's opinion based on an apparent improvement in plaintiff's mental impairments. There are over 1000 pages of medical records showing that plaintiff continued to receive treatment at the VA in 2013, 2014, and 2015. (Tr. 2183-2945, 2958-3344). The ALJ summarizes these records by stating that plaintiff engaged in counseling and group therapy and was "consistently found to be free of illicit substances and alcohol." (Tr. 23). However, plaintiff continued with "anxiety, depression, and a history of substance abuse." (*Id.*). Based on these conclusory generalizations, the ALJ found that plaintiff's "psychological

_____

[7] Effective March 26, 2017, the regulations were amended and these sections now state:

> [W]e will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim. . . .

However, because the ALJ made his decision in 2015 before the new regulations went into effect, the Court must apply the regulations that existed at the time of the decision. *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

difficulties are of a moderate nature rather than producing the marked impairment described by Dr. Lin." (*Id.*). Again, the Court is unable to discern the evidentiary basis for the ALJ's conclusion that plaintiff suffered from only "moderate" and not "marked" limitations. The ALJ's selective parsing of the medical record does not substantiate his decision to discount Dr. Lin's opinion of marked limitations and does not substantially support the ALJ's finding that plaintiff's limitations were only moderate. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion that "some unspecified improvement in Plaintiff's mood cured any anxiety or depression" appeared to be "grounded in a myopic reading of the record combined with a flawed view of mental illness"); *Germany-Johnson v. Commissioner of Social Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (substantial evidence did not support ALJ's decision where the ALJ failed to explain why he discounted the finding of the treating physician and "was selective in parsing the various medical reports").

The Court also finds that the ALJ's decision does not reflect a consideration of the regulatory factors in assessing the weight to the treating psychiatrist's opinion. Where, as here, an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must nevertheless balance certain regulatory factors in assessing the weight to give that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Here, the ALJ made no attempt to apply the above regulatory factors. The ALJ did not discuss Dr. Lin's long-standing treatment history with plaintiff at the VA dating back to 2009, nor did the ALJ discuss the frequency of his examinations of plaintiff, the nature and extent of his treatment relationship, the supportability of his opinion, or the consistency of his opinion with the record as a whole. *See id. See also Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The Court cannot say that the opinion of Dr. Lin is "so patently deficient that the Commissioner could not possibly credit" it and therefore

excuse the ALJ's failure to conduct a meaningful review in this case. *Wilson*, 378 F.3d at 546-47. Plaintiff received treatment at the VA beginning in 2009. In his May 2013 mental impairment questionnaire, Dr. Lin indicated that plaintiff is "very well known to [the VA] and our services." (Tr. 2182). Dr. Lin cited to assessments and treatment modalities and indicated that even though plaintiff's drug dependency is "well-managed," his symptoms still persist. (*Id.*). The ALJ was required to provide "good reasons" for giving Dr. Lin's opinion "little weight" and adequately consider the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Because he failed to do this, the ALJ's rejection of Dr. Lin's opinion is not supported by substantial evidence. Moreover, the ALJ's failure to consider the VA's disability determination warrants remand. Plaintiff's third assignment of error should be sustained.

### 2. The ALJ's credibility determination is not substantially supported

As his first assignment of error, plaintiff alleges that the ALJ erred in assessing his credibility. Although the ALJ's reevaluation of the medical opinion evidence and consideration of the VA disability determination may impact the remainder of the ALJ's sequential evaluation, resolution of plaintiff's first assignment of error is nonetheless warranted because the ALJ's credibility finding is patently deficient.

Although it is for the ALJ and not the reviewing Court to evaluate the credibility of witnesses, the ALJ must determine the claimant's credibility based on consideration of the entire case record and explain his credibility determination. *Rogers*, 486 F.3d at 247-48. In addition to the objective medical evidence, when assessing the credibility of the claimant's statements the ALJ should consider the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes to alleviate

the symptoms; treatment, other than medication, the individual receives for relief of the symptoms; measures other than treatment the individual uses to relieve the symptoms; and any other factors concerning the individual's functional limitations and restrictions due to his symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

Here, the ALJ failed to provide an adequate explanation for his credibility finding and did not discuss the regulatory factors the ALJ must address in assessing plaintiff's testimony. The ALJ failed to even mention plaintiff's most recent testimony at the November 2015 remand hearing. The only reasons the ALJ gave for finding plaintiff was only partially credible were plaintiff's September 2009 statement to a psychologist that he was unable to work because of a suspended driver's license and his criminal history and the fact that there are only two years in the past fifteen in which plaintiff made over $10,000. (Tr. 19). The ALJ made no attempt to apply the regulatory factors, and the decision is not "sufficiently specific to make clear to [plaintiff] and to any subsequent reviewers the weight the [ALJ] gave to [plaintiff's] statements and the reasons for that weight." *Rogers*, 486 F.3d at 248 (quoting SSR 96-7p, 1996 WL 374186). Accordingly, plaintiff's first assignment of error should be sustained. On remand, the ALJ should reassess plaintiff's credibility in accordance with the regulations and SSR 96-7p.

### 3. The remaining assignments of error

It is not necessary to address plaintiff's remaining assignments of error; namely, that the ALJ's RFC determination is not substantially supported and that the ALJ erred in evaluating his severe mental limitations. Because this case should be remanded for the ALJ to reconsider and reweigh Dr. Lin's opinion and reassess plaintiff's credibility, this may impact the remainder of the ALJ's analysis. Therefore, the Court declines to reach these two remaining assignments of error.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). In addition, the ALJ failed to obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments as previously ordered by the Appeals Council. (Tr. 204). This matter should be remanded for further proceedings, including consideration and reevaluation of the opinions of the treating physician and other medical sources of record; obtaining evidence from a medical expert as ordered by the Appeals Council; reassessment of plaintiff's credibility; and obtaining additional medical evidence and vocational testimony as warranted, consistent with this decision.

<strong>IT IS THEREFORE RECOMMENDED THAT</strong>:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _7/31/2018_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ERIC W. CASTELLON,
    Plaintiff,

Case No. 1:17-cv-418

Black, J.

Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).